## COLGATE PALMOLIVE PEET CO. v. DISTRICT OF COLUMBIA.

### No. 7321.

United States Court of Appeals for the District of Columbia.

Decided Jan. 15, 1940.

Seth W. Richardson, Raymond N. Beebe, Adrien F. Busick, and Raymond C. Cushwa, all of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and Glenn Simmon, Asst. Corp. Counsel, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS, MILLER, EDGERTON, and VINSON, Associate Justices.

MILLER, Associate Justice.

This case involves, as did Nos. 7213,[1] 7319,[2] and 7320,[3] all decided this day, the District of Columbia business privilege tax statute approved August 17, 1937.[4] In addition to the questions considered and decided in No. 7213, Neild and Sauerhoff v. District of Columbia,[5] a further question is here presented, i.e., whether the statute was intended to apply to a person in the situation of the present appellant. The following findings of fact made—among others —by the District of Columbia Board of Tax Appeals, sufficiently reveal that situation:

"The petitioner [appellant] is a Delaware Corporation with its principal place of business at Jersey City, New Jersey. It is engaged in the business of selling soap and soap products. During the calendar year 1936 it maintained a warehouse in the District of Columbia from which it sold merchandise to its customers in the amount of $1663.12. During the same year it maintained a premium store in the District for

---

[1] Neild and Sauerhoff v. District of Columbia, — App.D.C. —, 110 F.2d 246.

[2] General Electric Co. v. District of Columbia, — App.D.C. —, 110 F.2d 261.

[3] General Electric Supply Corp. v. District of Columbia, — App.D.C. —, 110 F.2d 262.

[4] 50 Stat. 673, 688.

[5] — App.D.C. —, 110 F.2d 246.

the redemption of merchandise coupons. In addition to the activities just enumerated the petitioner sold merchandise to customers in the District of Columbia in the amount of $454,548.80. Such sales were the result of orders solicited in the District by employees of the petitioner, subject to approval by the petitioner at an office without the District. The merchandise so sold was shipped from a point without the District to the customers within the District by common carriers."

To support its contention that the statute was not intended to impose a tax upon the privilege of conducting business by means of such solicitation and delivery, appellant relies upon the case of Beitzell v. District of Columbia. [6] There the court held that the intention of Congress, as revealed in the there pertinent statute, [7] was not to impose a license tax upon the soliciting agents of nonresident brewers. Assuming that it is possible so to read the earlier statute and so to interpret the fact situation of the Beitzell case as to permit the conclusion that the court there correctly determined the intent of Congress, nevertheless, the rule of construction used by the court in doing so was improperly applied in that case, and, certainly, is not a proper rule to be used in the present case.

■ Even assuming without deciding, as we did in the Neild case, that commerce between the District of Columbia and the states is necessarily and in all cases interstate commerce, it does not follow that Congress is subject to the limitations imposed by the commerce clause [8] upon the states. We pointed out in the Neild case that it may be an unwise policy for Congress, in legislating for the District of Columbia, to use a method of taxation which would contravene—if they were applicable—the prohibitions imposed by the commerce clause upon the states. But, as we there went on to say, that is not a question for the courts to decide; the end is a

permissible one—under either the commerce clause or the District of Columbia clause [9] —and hence the means used are proper if Congress deems it wise to use them.

■ There is no warrant, therefore, for saying, as the court said in the Beitzell case, that "it is not fair to presume, in the absence of an express declaration to that effect, that Congress intended to disregard the settled principle of commercial intercourse of the country, which, as embodied in the Constitution of the country, prohibits a State from imposing a license tax upon persons representing owners of property outside of the State, for the privilege of soliciting orders within it, as agents of such owners, for property to be shipped to persons within the State." [10] That negation of presumption of intent might be proper if applied to state legislation, in order to sustain its validity,[11] but it would be entirely improper to apply it in interpreting the legislation here involved, which was enacted by Congress in the lawful exercise of its delegated powers. [12] The principles underlying our federal form of government, embodied in the Constitution and expressed in both the District of Columbia clause and the commerce clause, are equally fundamental as—if not paramount to—the principle of free commercial intercourse, between the states, to which the court referred.

■ When an act of Congress speaks in clear and certain language pursuant to a delegated power, as does the statute involved in the present case, there is no more reason for requiring express declaration of intent to disregard a principle which underlies the constitutional prohibition of state regulation of interstate commerce, than there would be to require express declaration of intent to disregard similar principles which underlie constitutional prohibitions and limitations upon the states, concerning the coinage of money or the establishment of post offices. [13]

---

[6] 21 App.D.C. 49.

[7] Act of July 1, 1902, § 7, 32 Stat. 590, 622.

[8] U.S.Const. Art. I, § 8, Cl. 3.

[9] U.S.Const. Art. I, § 8, Cl. 17.

[10] 21 App.D.C. 49, 60.

[11] ■ It is a cardinal principle of statutory construction that a statute must be construed, if possible, so as to avoid any doubt as to its constitutional validity. Carey v. South Dakota, 250 U.S. 118, 122, 39 S.Ct. 403, 63 L.Ed. 886; South Utah Mines & Smelters v.

Beaver County, 262 U.S. 325, 331, 43 S.Ct. 577, 67 L.Ed. 1004; Arkansas Natural Gas Co. v. Arkansas Railroad Comm., 261 U.S. 379, 383, 43 S.Ct. 387, 67 L.Ed. 705. See also, United States v. Powers, 307 U.S. 214, 217, 59 S.Ct. 805, 83 L.Ed. 1245.

[12] Cf. St. Paul, Minneapolis & Manitoba Ry. v. Phelps, 137 U.S. 528, 533, 11 S.Ct. 168, 34 L.Ed. 767.

[13] See Sturges v. Crowninshield, 4 Wheat., U.S., 122, 202, 4 L.Ed. 529; Adm'r of Thompson v. United States, 246

We have carefully considered all other assignments and find them to be without merit.

Affirmed.

STEPHENS, Associate Justice, concurs in the result.

U.S. 547, 551, 38 S.Ct. 349, 351, 62 L. Ed. 876: "The intention of the Congress is to be sought for primarily in the language used, and where this expresses an intention reasonably intelligible and plain it must be accepted without modification by resort to construction or conjecture." See also, Adams Express Co. v. Kentucky, 238 U.S. 190, 199, 35 S.

Ct. 824, 826, 59 L.Ed. 1267, Ann.Cas. 1915D, 1167: "It is elementary that the first resort, with a view to ascertaining the meaning of a statute, is to the language used. If that is plain there is an end to construction and the statute is to be taken to mean what it says."

